# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Kelly L. Stephens | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: December 16, 2025

Mr. Philip Lee Ellison
Outside Legal Counsel
P.O. Box 107
Hemlock, MI 48626

Mr. B. Thomas Golden
Mr. Brian Kenneth McLaughlin
Mr. James Alan Ziehmer
Office of the Attorney General of Michigan
P.O. Box 30754
Lansing, MI 48909

Re: Case No. 25-1682, *Brigitte Hendershot v. Terry Stanton, et al*
Originating Case No. 1:25-cv-10001

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0341p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

BRIGITTE HENDERSHOT,

                *Plaintiff-Appellant*,

    *v.*

TERRY STANTON and RACHAEL EUBANKS, in their official capacities,

                *Defendants-Appellees.*

No. 25-1682

---

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:25-cv-10001—Nancy G. Edmunds, District Judge.

Decided and Filed: December 16, 2025

Before: GRIFFIN, THAPAR, and HERMANDORFER, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. James A. Ziehmer, Brian K. McLaughlin, B. Thomas Golden, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

**OPINION**

---

THAPAR, Circuit Judge. Brigitte Hendershot alleges that Michigan currently holds between $200 and $600 that belongs to her. When she asks for her money back, she claims Michigan will return it without interest—a failure she says effectuates an unconstitutional taking. Hendershot has standing to make this claim. But we can't decide more on this record, so we reverse and remand.

I.

In 1995, Michigan enacted the Uniform Unclaimed Property Act (UUPA) to administer unclaimed assets. The Act provides that "all property, including any income or increment derived from the property," left unclaimed for a defined period is "presumed abandoned." Mich. Comp. Laws § 567.223(1); *id.* §§ 567.225–.237. After the state claims the presumptively abandoned property, a rightful owner may petition for the state to return the original asset or the monetary value of the principal. *Id.* § 567.245(1). *See generally Dine Brands Glob., Inc. v. Eubanks*, --- N.W.3d ----, 2025 WL 898837 (Mich. Mar. 24, 2025).

If asked, the state must return the property—but not necessarily the interest earned on it. The state pays the original owner interest only if the account was interest bearing when it was delivered to the state. Mich. Comp. Laws § 567.245(3) (noting the state will pay "interest at a rate of 6% a year or any lesser rate the property earned while in the possession of the holder"). In turn, the state doesn't pay interest to owners of assets that weren't interest bearing when Michigan took custody. *Id*. § 567.243(3); *O'Connor v. Dep't of Treasury*, 9 N.W.3d 351, 357 (Mich. Ct. App. 2023).

Plaintiff Brigitte Hendershot alleges that the state has taken custody of between $200 and $600 that is rightfully hers. To substantiate this, she attached a screenshot of Michigan's searchable database for unclaimed property indicating the state holds three financial accounts under her name. But she doesn't indicate whether her accounts were interest bearing when Michigan took them. Nor does she allege a specific amount of interest at issue, or even that the accounts presently earn interest.

Hendershot plans to reclaim the accounts but has yet to ask for them back. Instead, she sued the administrative manager and the administrator of Michigan's unclaimed property program in their official capacities under 42 U.S.C. § 1983, alleging that their policy of withholding interest violates the Fifth Amendment. U.S. Const. amend. V. On behalf of a putative class, she seeks declaratory and injunctive relief requiring the defendants to pay her interest on her unclaimed property upon its return.

Case 1:25-cv-10021-PTM ECF No. 20, PageID.173 Filed 12/16/25 Page 4 of 9    (4 of 9)

No. 25-1682                       Hendershot v. Stanton et al.                              Page 3

The defendants moved to dismiss, arguing that sovereign immunity barred this suit and that Hendershot lacked Article III standing. The district court agreed that Hendershot lacked standing. As it reasoned, "Michigan law does not grant a property right to individuals whose property is abandoned in any interest the State earns on that property." R. 14, Pg. ID 161. It thus concluded that "[w]ithout a property right to any interest earned on her principal while in the State's custody, [Hendershot] has not demonstrated an injury by [the interest] being withheld." *Id.*

Hendershot timely appealed.

II.

To meet Article III's standing requirement, a plaintiff must have a personal stake in the dispute. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007). In this case, that "irreducible constitutional minimum" requires Hendershot to show (1) an injury-in-fact that is (2) caused by Michigan's challenged action and (3) redressable by our court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992).

Hendershot's complaint meets this standard: She claims that any interest Michigan earned from her accounts was rightfully hers, and she enlists our help to get it back. Her complaint thus alleges a classic pocketbook injury caused by the defendants and redressable by her requested relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). That's enough for Article III standing. *See Collins v. Yellen*, 594 U.S. 220, 243 (2021).[1]

The district court reached the opposite conclusion by collapsing the standing analysis into the merits inquiry. Ordinarily, the question of whether we have the "power to hear a case" is "quite separate" from "whether the allegations the plaintiff makes entitle [her] to relief." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (quotation omitted). Here,

---

[1]The defendants cursorily argue that "it is unclear how [Hendershot's] claim is even ripe" because she hasn't filed an administrative claim "to reestablish title to the property." Appellee's Br. at 9. Whether that ripeness argument can square with *Knick v. Township of Scott*, 588 U.S. 180 (2019), is an open question in our circuit. Other courts have split on the issue. *Compare, e.g.*, *Knellinger v. Young*, 134 F.4th 1034, 1044 (10th Cir. 2025), *and Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1332–33 (11th Cir. 2025), *with Dillow v. Treasurer of Pa.*, No. 24-2004, 2025 WL 2813596, at *2–3 (3d Cir. Oct. 3, 2025). Because the defendants haven't pressed ripeness as a ground for affirmance, we leave the resolution of any ripeness arguments for remand.

Case 1:25-cv-10021-PTM ECF No. 20, PageID.174 Filed 12/16/25 Page 5 of 9 (5 of 9)

No. 25-1682                    Hendershot v. Stanton et al.                    Page 4

however, the district court first found that Hendershot lacked a right to the interest on the assets held in Michigan's custody—a conclusion about the merits. It then conflated that reasoning with the injury-in-fact prong of the standing analysis. Thus, the district court framed its ultimate merits conclusion (Hendershot wasn't entitled to the interest) as a jurisdictional one (Hendershot couldn't be injured by the state withholding the interest). In short, the district court erred when it dismissed the case for lack of standing.

III.

This error doesn't automatically warrant remand. Ordinarily, we could affirm on any alternate grounds that the defendants raised before the district court. Or we could convert the motion to dismiss for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), into a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6). *See Morrison*, 561 U.S. at 254. We could then "proceed to address whether [Hendershot's] allegations state a claim." *Id.* But the current record doesn't allow us to convert the motion.

*First*, Hendershot's complaint is bare bones. The only information she provides about her accounts in Michigan's custody comes from a screenshot appended to her complaint. The complaint itself doesn't allege whether her account was interest bearing when it was delivered into Michigan's custody. Without more facts in the record, we can't assess the merits of her claim.

*Second*, the defendants' briefing is too perfunctory to affirm on alternate grounds in the record. Though the defendants asserted that sovereign immunity barred Hendershot's suit before the district court, they didn't press this argument on appeal. Without briefing on this affirmative defense, it wouldn't be fair for us to raise it on the defendants' behalf.

*Third*, the district court didn't do enough for us to treat its standing opinion as a merits conclusion. *See id*. The district court didn't address the text of the UUPA or Michigan's common law of abandonment, much less precedent from our court, the state supreme court, or the Supreme Court on interest in custodial accounts. Instead, it decided that it was bound by an intermediate Michigan appellate court's rejection of a similar challenge. R. 14, Pg. ID 161 & n.4 (discussing *Kemerer v. Michigan*, --- N.W.3d ---, No. 362055, 2024 WL 4609911, at *9 (Mich.

Ct. App. Oct. 29, 2024), *appeal denied*, 21 N.W.3d 201 (Mich. 2025)). That opinion interpreted the UUPA to decide that (1) the plaintiff doesn't have "a superior interest of ownership" in her property while it's in Michigan's custody, and (2) the common-law rules on interest don't apply to unclaimed property that the state "presumed abandoned." *Kemerer*, 2024 WL 4609911, at *9.

For starters, intermediate court opinions aren't binding in federal court. We give intermediate state court opinions weight only to the extent they correctly predict what the state supreme court will do. *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). And although state appellate court precedent may be particularly persuasive where the state supreme court denies leave to appeal, it lacks value if there is "any clear indication" that the decision was "erroneously" decided or that the decision was "contrary to previously enunciated decisions" of the state supreme court. *Ruth v. Bituminous Cas. Corp.*, 427 F.2d 290, 293 (6th Cir. 1970). Here, there is ample reason to doubt that either of *Kemerer*'s holdings accurately reflects the Michigan Supreme Court's views.

It's true that "the existence of a property interest" may be determined by reference to "independent source[s] such as state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). But although "[s]tate law is one important source" to define property interests, it "cannot be the only source." *Tyler v. Hennepin County*, 598 U.S. 631, 638 (2023). After all, "the Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the state wished to take." *Hall v. Meisner*, 51 F.4th 185, 190 (6th Cir. 2022). If longstanding property principles establish a "private property" right, Michigan cannot extinguish that right by statute, "even for the limited duration" unclaimed property remains in Michigan's custody. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980). Constitutional limits likewise govern Michigan's ability to "frame" property owners' actions "as abandonment to avoid the demands of the Takings Clause." *Tyler*, 598 U.S. at 647.

*Kemerer*'s conclusion that owners of unclaimed property have an inferior right to title disregards these limits. 2024 WL 4609911, at *9. As we've explained, Michigan "take[s] custody—not ownership—of unclaimed property" under the UUPA. *O'Connor v. Eubanks*, 83 F.4th 1018, 1021 (6th Cir. 2023) (per curiam), *cert. denied*, 145 S. Ct. 371 (2024), and *cert.*

Case 1:25-cv-10021-LVP-PTM ECF No. 20, PageID.176 Filed 12/16/25 Page 7 of 9 (7 of 9)

No. 25-1682 Hendershot v. Stanton et al. Page 6

*denied*, 145 S. Ct. 372 (2024). It doesn't "acquire title" to the property, much less any interest earned on it. *Id.* at 1020. This reasoning accords with the UUPA's text, which consistently describes the rightful holders of unclaimed property as "owner[s]" and the state's power as merely "custodial." Mich. Comp. Laws § 567.224; *id.* § 567.222(n). And it tracks the Michigan Supreme Court's guidance that "custodial" statutes—like the UUPA—effectuate "no deprivation of property rights of an owner." *Schoener v. Cont'l Motors Corp.*, 106 N.W.2d 774, 777 (Mich. 1961).

*Kemerer*'s second conclusion that interest doesn't follow the principal seems equally suspect. 2024 WL 4609911, at *9. As the Michigan Supreme Court has long held, owners continue to have rights to interest on property in the state's custody. *Brown v. Vidro*, 244 N.W. 227, 227 (Mich. 1932); *see also Star-Batt, Inc. v. City of Rochester Hills*, 650 N.W.2d 422, 423–24 (Mich. Ct. App. 2002); *Potter v. Wayne County*, 207 N.W.2d 448, 450 (Mich. Ct. App. 1973); *Grand Rapids Pub. Sch. v. City of Grand Rapids*, 381 N.W.2d 783, 785 (Mich. Ct. App. 1985). We've likewise concluded that interest earned on assets held under the UUPA "belongs to the owner," "even when the principal was not interest-bearing at the time the state took custody." *O'Connor*, 83 F.4th at 1023. As we explained, this reasoning is constitutionally compelled by the Fifth Amendment's requirement that states must repay interest earned on custodial accounts. *Id.*; *see also Webb's*, 449 U.S. at 164–65; *Phillips*, 524 U.S. at 159–60; *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235 (2003).

Michigan may have other merits arguments about the interest-follows-principal rule, the rule's application to the type of accounts at issue here, and whether the UUPA's statutory presumption "is itself sufficient for abandonment" in the common-law sense. *Tyler*, 598 U.S. at 646–47; *see Texaco, Inc. v. Short*, 454 U.S. 516, 535 n.28 (1982). Michigan also may have arguments about its entitlement to receive "reasonable administrative costs" for running the unclaimed-property program. *O'Connor*, 83 F.4th at 1023. But until this point, the State seems to have rested on *Kemerer* as a get-out-of-Takings-Clause-free card to "appropriat[e]" any traditional property "right" owners may have to accrued interest. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 155 (2021). Under the federal Constitution, property rights "cannot be so easily manipulated" by state-law labels. *Id.* (quoting *Horne v. Dep't of Agric.*, 576 U.S. 350, 365

No. 25-1682                     *Hendershot v. Stanton et al.*                                Page 7

(2015)).  No matter whether *Kemerer*'s or some other understanding of Michigan law controls, it thus remains incumbent on federal courts to assess state-law procedures against the Takings Clause's baseline constitutional protections.

*        *        *

At this phase in the proceedings, we know Hendershot has standing—but not much else. We reverse the district court's dismissal, and we remand for further proceedings.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-1682

BRIGITTE HENDERSHOT,

    Plaintiff - Appellant,

  v.

TERRY STANTON and RACHAEL EUBANKS, in their official capacities,

    Defendants - Appellees.

> **FILED**
> Dec 16, 2025
> KELLY L. STEPHENS, Clerk

Before: GRIFFIN, THAPAR, and HERMANDORFER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the district court's dismissal of the suit is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

                        **ENTERED BY ORDER OF THE COURT**

                        *Kelly L. Stephens*

                        Kelly L. Stephens, Clerk